**Roy Alvin PORTER, Appellant,**

v.

**The STATE of Texas, State.**

**No. 2–85–023–CV.**

Court of Appeals of Texas, Fort Worth.

Feb. 19, 1986.

---

Reedy Macque Spigner, McKinney, for appellant.

H. Ownby, Dist. Atty., and Judy Smith, Asst., McKinney, for State.

Before FENDER, C.J., HOPKINS, J., and HUGHES, J. (Retired).

## OPINION

HUGHES, Justice (Retired).

This is an involuntary mental health commitment case. Trial was to the jury which found appellant mentally ill. The jury further found that appellant, as a result of that mental illness, will, if not treated, continue to suffer severe and abnormal mental, emotional or physical distress and will continue to experience deterioration of his ability to function independently and is unable to make a rational and informed decision as to whether or not to submit to treatment. *See* TEX. MENTAL HEALTH CODE ANN. art. 5547–50(b)(2)(iii) (Vernon Supp.1986). In addition, the jury found that because of such mental illness appellant was likely to cause harm to himself and others. *See id.* art. 5547–50(b)(2)(i) and (ii). Appellant appeals on two points of error.

We affirm.

While traveling by bus to Oklahoma, appellant, an epileptic, had a seizure. He was let off the bus and wandered into the North Texas Medical Center. Upon his arrival at the Center, appellant was first taken to the emergency room because he was having one seizure right after another; he was later moved to the Intensive Care Unit after he was stabilized. In between seizures, appellant told the hospital staff his name was Steve. After finding a bus ticket, the hospital called the bus station and found out appellant's name was supposedly Steve Carter. Appellant then answered to that name. After trying to get in touch with non-existent people whom appellant said existed, the hospital started wondering if appellant was the person he claimed to be. It was then that the hospital decided a temporary mental commitment might be appropriate.

In his first point of error, appellant argues the evidence was insufficient to support the jury's findings concerning the likelihood of appellant causing harm to himself and others. In reviewing appellant's first point of error we must employ a clear and convincing evidence standard. *See id.* art. 5547–50(a).

The Supreme Court of Texas has defined the quantum of proof necessary to constitute "clear and convincing evidence" in a

mental health commitment proceeding, as follows:

Clear and convincing evidence is defined as that measure or degree of proof which will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established. This is an intermediate standard, falling between the preponderance standard of ordinary civil proceedings and the reasonable doubt standard of criminal proceedings. While the state's proof must weigh heavier than merely the greater weight of the credible evidence, there is no requirement that the evidence be unequivocal or undisputed. [Citations omitted.]

*State v. Addington,* 588 S.W.2d 569, 570 (Tex.1979). Having defined the standard of proof required, we now turn to appellant's insufficient evidence claim. In particular, appellant contends the medical testimony in his case did not set out specific acts by appellant which demonstrated appellant's inability to function independently as a result of mental illness as required by *Moss v. State,* 539 S.W.2d 936 (Tex.Civ. App.—Dallas 1976, no writ).

In *Moss* the abstract conclusions of two psychiatrists that the proposed patient was suffering from "chronic schizophrenia" or a "paranoid state" were found factually insufficient to support a jury finding of dangerousness. *See id.* at 951. In reaching its holding the court emphasized that neither psychiatrist recited any factual basis for their opinions. *See id.* Unlike *Moss,* the medical testimony in the instant case was not factually deficient.

■ In the present case, Dr. John Valcik, a practicing psychiatrist for fourteen years, testified that he conducted a diagnostic interview with appellant. This evaluation lasted forty minutes to an hour. As a result of such examination and a review of the records of people who had observed appellant, Valcik concluded appellant suffered from organic brain syndrome and had a borderline personality disorder. In elaborating on why he felt appellant suffered from organic brain syndrome, Valcik stated that when he asked appellant the meaning of the statement "There's no sense in crying over spilled milk" appellant was "totally unable to understand." Valcik went on to say that in his opinion appellant lacked the ability to take care of his basic needs, citing appellant's refusal to take his medication.

Valcik further testified that each time appellant gets off his medication and suffers from seizures he is causing additional damage to his brain. Valcik also testified that appellant had a problem with judgment. Valcik explained that appellant could not reconcile his feelings that the hospital was using his epilepsy against him with his idea that hospitals were places that helped people. Valcik, however, revealed that appellant was not bothered by the fact that he could not reconcile these thoughts. We find such testimony to be sufficient under the standards imposed by *Moss. See id.*

In addition, the testimony of two licensed vocational nurses at North Texas Medical Center also supports the jury's findings. Cindy Scullins, one of these nurses, found appellant after he wandered into North Texas Medical Center. She testified she could not get appellant to speak. She stated that while another nurse went to get a wheelchair to take appellant to the emergency room, she held appellant. She further stated that about the time they put the wheelchair under appellant he passed out and went into seizures. She then testified that appellant was transported to the emergency room where they discovered an identification band on appellant's arm which had "epilepsy" written on the back of it. Scullins described appellant's behavior when he was not having seizures as being "erratic." She stated appellant was happy one minute and then angry the next. Then he would be sad. She explained that when he was angry he would try to get out of bed saying he knew his rights and he could leave if he wanted. While she stated she did not hear appellant verbally abuse any of the staff, she did reveal that appellant once became physically abusive toward her,

pulling her down on the bed and not letting her up despite the fact he was hampered by wrist restraints.

Mona Box, another licensed vocational nurse at the Center, testified that appellant became violent under her care. She stated that when she bent down to check appellant's I.V., he grabbed her around the neck and when she tried to get loose he grabbed her even tighter. She further testified that when she hollered appellant grabbed her so she could not breathe and the other nurses had to shake appellant to make him let go of her. In addition, Box stated appellant kept ripping out his I.V. In light of all of the foregoing testimony, we overrule appellant's first point of error.

By his second point of error appellant contends the trial court erred in ordering his temporary mental health commitment as only one of the three certificates of medical examination, which were filed in the trial court, was placed into evidence. We disagree with appellant's contention as we can find nothing in the Mental Health Code which requires the certificates on file be placed into evidence.

 TEX. MENTAL HEALTH CODE ANN. art. 5547–46(a) (Vernon Supp.1986), requires that certificates based on examinations conducted within the preceding thirty days be filed by two physicians before a hearing may be held on an application for court-ordered mental health services. Article 5547–46(c) provides that unless two certificates are on file at the time of the hearing on the application the judge shall dismiss the application. Thus, by its terms, art. 5547–46 is jurisdictional in nature. If the certificates are not on file the case must be dismissed. However, nothing in this article requires the certificates be introduced into evidence.

■ Further, we can see no harm to appellant's rights resulting from the State's failure to offer the other two certificates on file into evidence. Article 5547–47(a) states that the patient and his attorney may waive in writing the right to cross-examine witnesses and if such waiver is made and filed with the court the court *may* admit into evidence the certificates on file. However, under the provisions of art. 5547–47(b), a person cannot be committed to a mental hospital solely on the basis of these certificates of medical examination; competent medical or psychiatric testimony is necessary. *See Munoz v. State,* 569 S.W.2d 642, 644 (Tex.Civ.App.—Corpus Christi 1978, no writ); *see also* TEX. CONST. art. I, sec. 15–a; TEX. MENTAL HEALTH CODE ANN. art. 5547–50(c) (Vernon Supp.1986). Requiring the certificates on file to be admitted into evidence would only be necessary to protect a patient's rights if the statute provided that the certificates alone could support a finding of commitment. Since the State must present expert medical testimony, we find no harm in the State's introduction of only one certificate into evidence. Accordingly, we overrule appellant's second point of error.

The judgment is affirmed.